IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CV-588-FL

| | | |
|---|---|---|
| RONNIE HILTON BASS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings. (DE 15, 23). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr., issued a memorandum and recommendation ("M&R") (DE 25), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm the final decision by defendant. Plaintiff timely objected to the M&R. In this posture, the issues raised are ripe for ruling. For the following reasons, the court adopts the M&R as its own, grants defendant's motion, denies plaintiff's motion, and affirms defendant's final decision.

**BACKGROUND**

On November 16, 2014, plaintiff filed an application for disability insurance benefits, and he protectively filed an application for supplemental security income December 31, 2015, alleging disability beginning December 31, 2012, in both applications. Both claims were denied initially

1

and upon reconsideration. Hearing was held July 11, 2017, before an administrative law judge ("ALJ") who determined that plaintiff was not disabled in decision dated September 22, 2017. Plaintiff appealed the ALJ's decision to the appeals council. On October 16, 2018, the appeals council denied plaintiff's request for review, making defendant's decision final with respect to plaintiff's claims. Plaintiff filed the instant action December 14, 2018, seeking judicial review of defendant's decision.

## DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence . . . but less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review . . . is a record of the basis for the ALJ's ruling, which should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must

"'include a narrative discussion describing how the evidence supports each conclusion,'" Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Id. (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

To assist in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendation." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medial impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the social security claimant during the first four steps of the inquiry, but shifts to the Commissioner of Social Security ("Commissioner") at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 31, 2012, the alleged onset date. (Transcript of the Record ("Tr.") 19). At step two, the ALJ found that plaintiff had the following severe impairments: major depressive disorder; anxiety disorder; personality disorder, not otherwise specified; and drug or substance addiction disorder. (Tr. 19-20). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in the regulations ("listings" or "listed impairments"). (Tr. 20-21); see 20 C.F.R. § 404, Subpt. P, App. 1 [hereinafter "Listing of Impairments"].

Before proceeding to step four, the ALJ determined that, during the relevant time period, plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, subject to the following limitations:

> he can understand, remember and carry out simple instructions, which is defined to mean [] activity that is consistent with a reasoning level of 2 or 3 in the Dictionary of Occupational Titles. The claimant can sustain attention and concentration sufficient to carry out those instructions over two-hour periods in an 8-hour workday. He can work in proximity to, but not coordination [sic] with, co-workers and supervisors. The claimant can work in a low stress setting, which is specifically defined to mean: no fast-paced production, only simple work-related decisions, few or no changes in the work setting, and only superficial contact with the general public.

(Tr. 21).

At step four, the ALJ concluded that plaintiff was unable to perform his past relevant work as an automobile station attendant and tire technician. (Tr. 24). However, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, based upon consideration of plaintiff's age, education, work, experience, and RFC. (Tr. 24-25). Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act. (Tr. 25).

B.     Analysis

In his objections, plaintiff argues 1) the ALJ erroneously determined that plaintiff had moderate difficulties, as opposed to marked difficulties, maintaining concentration, persistence, and pace and 2) the ALJ failed to properly evaluate plaintiff's RFC with respect to his ability to maintain concentration, persistence, and pace.

1.     Degree of Difficulty Maintaining Concentration, Persistence, and Pace

As an initial matter, the court notes that plaintiff did not contest the ALJ's finding that he has moderate difficulties maintaining concentration, persistence, and pace in his motion for judgment on the pleadings; therefore, the magistrate Judge did not address this issue in the M&R. (See M&R (DE 25) at 7)[1] ("Here, the ALJ found Claimant was moderately limited in his ability concentrate, persist, or maintain pace . . . Claimant does not appear to contest the ALJ's finding that he is moderately limited in that area of function; rather Claimant contends that the RFC does not adequately account for his limitation."). Although the court is required to review de novo all arguments related to an issue raised before the magistrate judge, new issues never raised before

---

[1]     Page numbers in citations to documents in the record specify the page number designated by the court's electronic case filing (ECF) system, and not the page number, if any, showing on the face of the underlying document.

the magistrate judge do not require such an analysis. Cf. United States v. George, 971 F.2d 1113, 1118 (4th Cir. 1992) (emphasis added) ("We believe that as part of its obligation to determine de novo any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate.") (emphasis added); Samples v. Ballard, 860 F.3d 266, 274 (4th Cir. 2017) ("Translating this to the George framework, we do not believe that an 'issue' as referred to in George can be defined at the high level of generality [appellant] urges us to apply here."). However, in an abundance of caution, the court will address plaintiff's argument de novo.

When evaluating mental impairments, the ALJ rates a plaintiff's degree of functional limitation as either none, mild, moderate, marked, or extreme in four broad functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(b)–(c). In the instant matter, the ALJ found that plaintiff experienced moderate difficulties concentrating, persisting, and maintaining pace. In reaching that conclusion, the ALJ noted that plaintiff "reported he needed to be reminded to bathe, eat, and take medication[;]" however, plaintiff's "mental status examinations . . . have generally been within normal limits." (Tr. 20).

Objecting to the ALJ's conclusion, plaintiff argues his ability to concentrate, persist, or maintain pace suffers from marked limitations,[2] relying on his statements regarding depression, anxiety, and energy levels set forth in Exhibits 3F and 5F. (See Pl. Obj. (DE 26) at 5). The ALJ sufficiently addressed these exhibits and the attendant statements in her decision. Citing exhibits 3F, 4F, and 5F, the ALJ noted that plaintiff reported experiencing low energy, anxiety, depression,

---

[2] A "marked" limitation "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation "also means a limitation that is 'more than moderate' but 'less than extreme.'" Id.

irritability, mood swings, and uncontrolled crying spells while being treated at Freedom House Recovery in 2014. However, the ALJ also noted plaintiff's "medications were adjusted on multiple occasions to improve his depressive symptoms," and during his subsequent visits to Freedom House Recovery in 2016 and 2017, plaintiff's "sleep was good and appetite within normal limits[,]" he "displayed normal motor activity, speech, and attention and concentration[,]" and he "reported his depression was overall better." (Tr. 22). Finally, the ALJ highlighted that on April 21, 2017, plaintiff visited Freedom House Recovery and "did not express any other depressive symptoms except complaint of low energy after reporting terminal illness of his mother-in-law." (Tr. 23). Accordingly, the ALJ discussed the full range of evidence bearing upon plaintiff's depression and anxiety, and substantial evidence supports her determination that plaintiff has moderate, rather than marked, difficulties maintaining concentration, persistence and pace.

2. Residual Functional Capacity

Next, plaintiff objects to the finding that the ALJ properly evaluated his RFC with respect to his ability to concentrate, persist, and maintain pace.

RFC "refers to a claimant's capabilities despite her impairments." Lawrence v. Saul, 941 F.3d 140, 141 n.2 (4th Cir. 2019) (citing 20 C.F.R. § 404.1545(a)). "[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019). The RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)). Where the ALJ says plaintiff can perform certain functions, he must discuss plaintiff's "ability to perform them for a full workday." Mascio,

780 F.3d at 637. "Once the ALJ has completed this function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." Thomas, 916 F.3d at 311; Woods v. Berryhill, 888 F.3d 686, 689 (4th Cir. 2018).

Here, the ALJ adequately addressed and accounted for plaintiff's moderate difficulties concentrating, persisting, and maintaining pace. In formulating plaintiff's RFC, the ALJ considered the opinions of Dr. Nancy Y. Herrera and Dr. Robert Brill, who each opined that plaintiff "can understand and remember short and simple instructions" and "can carry out simple tasks for two-hour periods over an 8-hour day at a non-productive pace." (Tr. 23). The ALJ gave "great weight" to these opinions because they "were consistent with the limited treatment records showing the mental status examinations being within normal limits." (Id.; see, e.g., Tr. 399, 431, 435). Based on this testimony, and the supporting evidence in the record, the ALJ determined that plaintiff could carry out simple instructions over two-hour periods in an eight-hour workday.

In addition, the ALJ explained that "limited weight" was given to "Ms. Jones's opinion concerning claimant's poor attention/concentration or lack of focus" because her opinion was "not supported by her records from Freedom House Recovery as his attention/concentration were not tested during multiple visits." (Tr. 24-23; see, e.g., Tr. 469, 474, 479, 483, 491). Finally, the ALJ noted that although plaintiff testified at hearing that he had not experienced any relief from his depression and anxiety symptoms, his medical records from 2017 indicated that his medication was helpful, his depression was better overall, "he did not express any other depressive symptoms except complaint of low energy after reporting terminal illness of his mother-in-law[,]" and his medical status examinations were within normal limits. (Tr. 23; see, e.g., Tr. 484, 488, 491). Thus, the ALJ discussed the relevant evidence, explained how she accounted for plaintiff's limitations, and cited substantial evidence in support of the RFC determination.

However, plaintiff argues the RFC is flawed because it fails to account for his need to be off task in excess of 10% of the workday. Plaintiff's argument is unpersuasive where he fails to cite any evidence in the record supporting his need for this limitation. Presumably, plaintiff is relying on the vocational expert's answer to the ALJ's hypothetical, wherein the vocational expert testified that no jobs would be available to person who is off task in excess of 10% of the workday. Yet, the hypothetical precipitating this testimony was only a question by the ALJ, not evidence regarding the same. (See Tr. 49).

At hearing, the ALJ asked the vocational expert several questions, including one addressing all of the limitations in plaintiff's RFC. Significantly, in response to that inquiry, the vocational expert testified that three jobs would be available in significant numbers in the national economy. (See id.). While the ALJ was required to consider this testimony, she was not required to consider other testimony unrelated to plaintiff's record-based impairments. See Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989) ("It is well established that for a vocational expert's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments."); see also Koonce v. Apfel, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (stating that an ALJ is afforded "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question.").

In sum, the ALJ's RFC determination is sufficiently explained and supported by substantial evidence.

## CONCLUSION

Based on the foregoing, and upon de novo review of the administrative record, the court ADOPTS the recommendation in the M&R, DENIES plaintiff's motion for judgment on the

9

pleadings, (DE 15), and GRANTS defendant's motion for judgment on the pleadings. (DE 23).

The clerk is DIRECTED to close this case.

    SO ORDERED, this the 10th day of March, 2020.

                                          LOUISE W. FLANAGAN
                                          United States District Judge